LILLIAN C. MUÑOZ (CA SBN 279427)
Lillian@Jarrettadamslaw.com
JARRETT ADAMS
*Pro Hac Vice Pending*
Jadams@Jarrettadamslaw.com
LAW OFFICE OF JARRETT ADAMS, PLLC.
40 Fulton Street, Floor 23
New York, NY 10038
Tel: (646) 880-9707
Fax: (646) 880-9707

Attorneys for Plaintiff Joshua Zamora Gonzales

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joshua Zamora Gonzales, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF COLTON and COLTON POLICE DEPARTMENT, COLTON POLICE OFFICERS OFC. MICHAEL COLLINS, DET. JACK MORENBERG, DOE SUPERVISOR for CITY of COLTON, AND DOES 1-10, INCLUSIVE, <br><br> Defendants. | **Case No.:** <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1) 42 U.S.C. §1983 (VIOLATION of 5th and 14th AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL) <br> 2) §1983 *MONELL* CLAIM <br> 3) §1983 SUPERVISORY LIABILITY <br><br> **DEMAND FOR JURY TRIAL** |

///
///
///
///
///

# I.     <u>INTRODUCTION</u>

1.     This civil rights action pursuant to 42 U.S.C. § 1983 seeks compensatory and punitive damages from Defendants for causing Plaintiff to be deprived of rights, privileges, and immunities secured by the Constitution and laws of the United States.

2.     Plaintiff Joshua Zamora Gonzales (hereinafter "Joshua Gonzales," "Mr. Gonzales, " or "Plaintiff") spent nine years in prison, wrongfully convicted of a drive-by shooting which occurred on October 5, 2008. There were three victims who suffered gunshot wounds, and several witnesses to the shooting, all who testified that they could not identify the shooter. Two of the victims specifically testified that Mr. Gonzales was not the shooter they saw firing shots from the moving vehicle.

3.     Mr. Gonzales' conviction hinged almost entirely on false, incriminating statements that were elicited by coercive investigative techniques used by lead Detective Jack Morenberg. Mr. Gonzales provided an alibi that was never investigated and adamantly denied being involved in the shooting.

4.     Mr. Gonzales unwaveringly maintained his innocence and ultimately through Mr. Gonzales' pro se filings, and with the assistance of court appointed counsel, Mr. Gonzales conviction was reversed, and his freedom secured.

## II.     <u>JURISDICTION AND VENUE</u>

5.     This action is brought by Plaintiff JOSHUA ZAMORA GONZALES, pursuant to 42 U.S.C. §1983.

6.     This Court has jurisdiction under 28 U.S.C. §1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983, and under 28 U.S.C. §1331.

1

7.     The acts and omissions complained of commenced on October 5, 2008, within the Central District of California. Therefore, venue lies in this District pursuant to 28 U.S.C. §1391.

### III.     PARTIES

8.     Plaintiff JOSHUA ZAMORA GONZALES resided in the State of California at all times alleged herein.

9.     Defendant CITY OF COLTON ("CITY") is, and at all times relevant hereto was, a duly authorized public entity or political subdivision, organized and existing under the laws of the State of California. Colton Police Department (hereinafter "CPD") is, and at all relevant times was, an agency and subdivision of Defendant CITY. The CITY and CPD are located within the State of California. At all relevant times, Defendant CITY and CPD possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the CPD and the actions of employees of the CPD, including customs, policies and/or practices relating to police tactics, methods, investigations, arrests, evidence, interrogations, and discovery; as well as to personnel supervision, performance evaluation, internal investigations, discipline, records maintenance, and/or retention. Defendant CITY is sued as a local government entity under 42 U.S.C. § 1983 because its customs, policies and/or practices with regard to the operation of the CPD were a moving force behind the constitutional violations claimed by Plaintiff herein.

10.     Upon information and belief, at all relevant times, Defendants COLTON POLICE OFFICERS OFC. MICHAEL COLLINS, the purported gang expert in this case, DET. JACK MORENBERG, DOE SUPERVISOR of Defendant MORENBERG, and DOES 1 through 10 were police officers, detectives, sergeants, captains, commanders, chiefs of police, civilian employees, agents, policy makers, and/or representatives of the CPD, as well as employees, agents, policy makers and representatives of Defendant CITY. At all relevant

2

times, said Defendants were acting under color of law and within the course and scope of their employment with the CITY and/or the CPD. These Defendants are natural persons and are sued both individually and in their official capacity. Upon information and belief, at all relevant times these Defendants were residents of the State of California.

11.    At present time, the true names and capacities of Defendants sued herein as DOE SUPERVISOR and DOES 1 through 10 are unknown to Plaintiff. Upon information and belief, the true names and capacities of DOE SUPERVISOR and DOE Defendants are contained in records, documents, and other discovery that is unavailable to Plaintiff and can only be ascertained through the discovery process. Upon information and belief, each of the DOE Defendants was in some manner responsible for the acts and omissions alleged herein, and Plaintiff will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

## IV.    **GENERAL ALLEGATIONS**

12.    Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

13.    Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this complaint.

14.    The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff.

///
///
///

3

# V.   **FACTUAL ALLEGATIONS**

## A.   **Shooting & Investigation**

15.   October 26, 2009, Mr. Gonzales was charged in San Bernardino County Superior Court with three counts of attempted murder and one count of shooting from a motor vehicle.  The information also alleged that Mr. Gonzales had personally and intentionally discharged a handgun causing great bodily injury, that he had discharged a firearm from a motor vehicle and that he had committed the crimes for a gang purpose within the meaning of the gang enhancement statute.

16.   On December 10, 2009, a jury convicted Mr. Gonzales on all counts and found the enhancement allegations to be true. On January 25, 2010, the trial court sentenced Mr. Gonzales to an aggregate term of 86 years and eight months to life in prison.

17.   Gonzales's convictions arose from a shooting that occurred in the early morning hours of October 5, 2008 outside of a house party in the city of Colton, California, where three victims were shot. Evidence at trial showed that there were about 100 people present at the party, including Mr. Gonzales who was wearing a baseball cap.

18.   During the party, Mr. Gonzales was standing and talking with a young lady when another guest accidentally bumped into him. Norberto Razo, who was hired as security for the party, testified that there was a brief exchange of words that concluded with Mr. Gonzales and the other guest peacefully walking away.

19.   The party continued for hours after the brief exchange and concluded without any further incidents. As partygoers made their way to their vehicles, a group of young men stood on the street corner (not including Mr. Gonzales and his two friends, David and Anthony) throwing up gang signs and heckling vehicles as they passed.

20.   Mr. Gonzales, along with his two friends David and Anthony, were heading home in a light red vehicle, as the young men standing on the corner

heckled and harassed vehicles as they passed by. At some point, three unknown occupants traveling in what witnesses describe as a dark colored vehicle, fired multiple shots at the young men standing on the corner.  The three young men were shot.

21.   Defendant Officer Michael Collins (the purported gang expert at trial), Defendant Detective Morenberg and other Officers and Detectives not named herein, arrived on scene and interviewed the victims and witnesses. Defendant Collins was assigned as an "ID Officer" to secure the scene, interview witnesses, and collect evidence.  Defendant Collins and Detective Morenberg, were told by victims and witnesses, that there were two shooters in a dark colored vehicle. One of the shooters was in the passenger seat and the other shooter was in the backseat wearing a baseball cap.

22.   Defendants Collins and Morenberg then learned from witnesses that Mr. Gonzales attended the party, was wearing a baseball cap and involved in the bumping incident that ended peacefully hours before the shooting.

23.   Despite Defendants Collins and Morenberg learning that the victims of the shooting were not a part of the bumping incident with Mr. Gonzales at the party, they still pursued Mr. Gonzales as if the shooting and the bumping incident were related.  They were not related, and the Defendants Collins and Morenberg knew that they were not related.

24.   The shooting took place in the early morning hours around 1:00 AM. Defendant Collins arrived at the scene around 12:55 a.m. and was relieved at around 1:00 pm., the next day.  Defendant Morenberg arrived at Mr. Gonzales residence at roughly 11:00 a.m. the next morning.  Mr. Gonzales was not home, but Defendant Morenberg searched Mr. Gonzales' residence, and did not find a weapon or any incriminating evidence.  Two days later, on October 6, despite the lack of connection between Mr. Gonzales and the crime, Defendant Morenberg returned and took Mr. Gonzales to the Colton Police Department in custody for

5

questioning.  The police told Mr. Gonzales and his mother that they were taking him in for questioning and would return him home after questioning.  After being taken to the police department, Mr. Gonzales was never taken home.  He was taken initially to Juvenile Hall, then remained in jail and prison for nine years.

25.   Mr. Gonzales was transported by police to the Colton Police Department. At the police station, Defendant Morenberg threatened Mr. Gonzales so he would falsely confess, by stating that if the victims died, Mr. Gonzalez would face the death penalty. Defendant Morenberg told Mr. Gonzalez that his only way out was to tell Morenberg the truth, that he did the shooting, and that others in his car also did the shooting.  Mr. Gonzales, under these circumstances of duress, and without voluntarily agreeing to talk to him, reluctantly talked to Defendant Morenberg.  Mr. Gonzales told Defendant Morenberg that he attended the party with two friends, David and Anthony. Mr. Gonzales maintained his innocence throughout the interrogation, vehemently denying being a part of any shooting.

26.   During the interrogation, Defendant Morenberg pretended that an unnamed officer called him and told him that one of the victims of the shooting "did not make it."  Defendant Morenberg made up this conversation in an effort to make Mr. Gonzales falsely confess, and falsely implicate the others in his car.  Mr. Gonzales continued to maintain his innocence but told Defendant Morenberg that he "couldn't snitch on someone."  This statement and others made by Mr. Gonzales were used by the prosecution as consciousness of guilt at trial.  If Mr. Gonzales had not been threatened and coerced, he would have not made any statements to Defendant Morenberg.

27.   Mr. Gonzales told Defendant Morenberg that he wore a baseball cap the night of the party and that he was a backseat passenger in a light red vehicle driven by his friend Anthony. Mr. Gonzales offered to take Defendant Morenberg to Anthony and David's house to verify his alibi. Defendant Morenberg did not take him up on his offer, and he, and other defendants, failed to investigate further.

6

28.   Instead of verifying or disproving Mr. Gonzales' alibi, Defendant Morenberg closed the Colton Police Department investigation in less than 24 hours, and arrested Mr. Gonzales, and no other suspect, in the case. He closed the case even though he had substantial doubts as to whether Mr. Gonzales was involved in the shooting, and even though there had allegedly been two shooters. The Defendants failed to search for a second shooter, failed to investigate leads, and failed to investigate and talk to Anthony and David who would have exonerated Mr. Gonzales.

29.   The Plaintiff is informed and believes, and thereon alleges, that Defendant Michael Collins, part of the Colton Police Department gang task force, and who claimed he was a gang expert, falsely reported that Mr. Gonzales "fell within a 10 percent range of gang members who kill with no remorse".  He knew of Mr. Gonzales and had seen him in photos, but had never personally spoken with or interviewed him, was not a psychologist, and did not have the expertise, qualifications or knowledge to falsely report that Mr. Gonzalez was the worst of the worst gang member who killed without no remorse.  His report was false because he had no factual basis, statistics, qualification or expertise to render such a recklessly false expert opinion.

**B.    Prosecution & Trial:**

30.   The State's evidence at trial consisted of eyewitness accounts of the shootings, a purported Gang Expert, Defendant Ofc. Michael Collins, and a Gunshot Residue (GSR) Test that allegedly found "two particles" of GSR on Mr. Gonzales hand.

**Witnesses**

31.   The State offered into evidence the testimony of two of the victims, Omar Vargas and Bryan Padilla, and their friends, Anthony and Michael Santoscoy. Not one witness identified Mr. Gonzales as being a shooter, or even as being inside the car from which the shots were fired.

32.   Each witness testified that the shots came from a black car and two of the witnesses specifically testified that they saw the shooter and Mr. Gonzales was not the person they saw firing shots.

**Gunshot Residue**

33.   The State offered into evidence a GSR test that was performed by Defendant Detective Morenberg. The results of the GSR test allegedly found two particles of GSR on Mr. Gonzales hand.

34.   Forensic criminalist Robert Ristow ("Mr. Ristow"), the State's own expert, testified that it was a "bit unexpected" to find gunshot residue on an individual's hands twelve hours after a shooting.  He noted that if residue were present from an incident that occurred twelve hours earlier, "it should have been removed by everyday life activities, including any hand washing prior to the testing".

35.   Mr. Ristow testified that the positive test result could have occurred for a variety of reasons, including inadvertent transfer of the particles to his hands from a surface contaminated with gunshot residue.  According to Mr. Ristow, it simply was not possible to identify the source of the GSR, therefore, his opinion was unhelpful to the prosecution.

**Gang Expert**

36.   Plaintiff is informed and believes, that to compensate for lack of evidence in the case, the State offered into evidence the testimony of Defendant Collins, a so-called "gang expert," who testified in conformity with his out of court report.  He testified falsely that Mr. Gonzales "fell within a 10 percent range of gang members who kill with no remorse".  He did not have the facts, statistics, qualifications or expertise to testify as to this opinion.

37.   Defendant Collins went on to testify that he had no history of interactions with Mr. Gonzales or the "Play Boyz" gang. Defendant Collins further

8

testified that he had no knowledge of any member of the "Play Boyz" or Mr. Gonzales being involved with the shooting for which he was charged.

**Gonzales' coerced and improperly *Mirandized* statements used at trial**

38.   Mr. Gonzales did not testify or call any witnesses at trial. The recorded portion of his interrogation was admitted into evidence. Although Mr. Gonzales maintained his innocence, Defendant Morenberg was able to get Mr. Gonzales to state that he was associated with a street gang called the "Play Boyz", and he went by the name "Knuckles".  The recording also showed that after he was threatened with facing the death penalty, which was not on the tape and occurred prior to his interrogation, Mr. Gonzales repeatedly stated that he "couldn't snitch on someone." Defendant Morenberg cajoled Mr. Gonzales into repeatedly stating he was not a snitch, even though he knew that the facts were very weak against Mr. Gonzales.  At trial, Defendant Morenberg testified that it was possible a shooter from another car did the shooting.

39.   In closing, the prosecutor argued to the jury that Mr. Gonzales was guilty because this was a gang shooting in retaliation for failing to show proper respect for Mr. Gonzales' gang attire at the party, that Mr. Gonzales demonstrated consciousness of guilt because he stated repeatedly he was not a snitch when questioned about his and others involvement, and Defendant Collins showed that Mr. Gonzales was an especially violent gang member because he was within the ten percent of gang members who showed no remorse.

**Sentencing and Appeal**

40.   On December 10, 2009, Mr. Gonzales was found guilty and on January 25, 2010, he was sentenced to an aggregate term of 86 years and eight months to life in prison.

41.   Mr. Gonzales exhausted his State Appeals and filed a timely petition for writ of habeas corpus with the District Court for the Central District of California on May 30, 2012. On July 19, 2013, the court denied the petition on the

9

merits and issued a certificate of appealability. On August 9, 2013, Mr. Gonzales filed a notice of appeal to the Court of Appeals for the Ninth Circuit.

42.   On April 18, 2017, the Ninth Circuit found insufficient evidence to support Mr. Gonzales' convictions, reversed the district court's decision and remanded with instructions to grant the petition for habeas relief. *Gonzales v. Gipson*, (9th Cir. 2017) 687 F. App'x 548, 552 opinion amended and superseded on denial of reh'g, (9th Cir. 2017) 701 F. App'x 558.

43.   The court concluded that Mr. Gonzales' convictions "rest[ed] on a speculative and weak chain of inferences," *Id.* at 551, and court found that "the California Court of Appeal's conclusion that the circumstantial evidence was sufficient to support Gonzales' convictions was objectively unreasonable." *Id.* at 561-562.

44.   By Minute order on May 15, 2018, the proceeding was resolved entirely in Mr. Gonzales' favor when the State's Attorney declined to prosecute him, and the San Bernardino County Superior Court dismissed the case in its entirety.

## VI.   PARTICIPATION, STATE OF MIND AND DAMAGES

45.   All Defendants acted illegally under color of law.

46.   Each individual Defendant participated in the violations alleged herein, and/or directed the violations alleged herein, and/or knew or should have known of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

47.   As joint actors with joint obligations, each individual Defendant was and is responsible for the failures and omissions of the other.

48.   Each individual Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

49.   Each Defendant acted deliberately, purposefully, knowingly and/or with deliberate indifference to, or reckless disregard for an accused's rights or the truth in engaging in the conduct alleged herein.

50.   As a direct and proximate result of the described acts, omissions, customs, practices, policies, and decisions of the Defendants, Plaintiff was wrongfully arrested, convicted, and incarcerated for nine years.

51.   As a direct and proximate result of his wrongful arrest, conviction, and incarceration, Plaintiff has lost his liberty and the quality and enjoyment of his life both during his period of incarceration and thereafter.

52.   As a direct and proximate result of his wrongful arrest, conviction, and incarceration, Plaintiff has suffered, continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish, mental and physical pain and injury, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension. For such injuries, he has incurred and will continue to incur significant damages.

53.   As a direct and proximate result of his wrongful arrest, conviction, and incarceration, Plaintiff has lost past and future earnings.

54.   As a direct and proximate result of his wrongful arrest, conviction, and incarceration, Plaintiff has been deprived of familial relationships as well as the society and companionship of friends and family.

55.   The aforementioned acts and/or omissions of Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith, and done knowingly, purposefully, and/or with deliberate indifference to and/or reckless disregard for Plaintiff's constitutional rights or the truth.

///
///
///
///

11

## VII.    CLAIMS FOR RELIEF

### A.    FIRST CLAIM FOR RELIEF: 42 U.S.C. §1983 (VIOLATIONS OF PLAINTIFF'S DUE PROCESS RIGHT TO A FAIR TRIAL) *Against Defendants Collins and Morenberg*

56.   Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth herein.

57.   Defendants Collins and Morenberg, while acting under color of law, individually and in concert with each other and/or with others not named herein, caused Plaintiff to be deprived of rights, privileges, and immunities secured by the Constitution and laws of the United States, and State of California, by, *inter alia*, coercive interrogation techniques that led to false, incriminating evidence during Mr. Gonzales' interrogation, obtaining statements from Mr. Gonzales in violation of his Fifth Amendment Rights, fabricated gang expert opinion evidence, reckless investigative techniques and failure to investigate, which resulted in evidence of innocence not being uncovered by Defendants.  The Defendants' failures lead to false, incriminating statements by Mr. Gonzales, fabricated evidence, and a failure to disclose material exculpatory evidence, and conducting a reckless investigation that shocks the conscience regarding the shooting, causing Mr. Gonzales to be deprived of liberty without due process of law. Defendants' acts and omissions that caused these violations were done with deliberate indifference to or in reckless disregard of Plaintiff's rights and the truth.

58.   Upon information and belief, Defendants' misconduct includes the presentation of false, deliberately fabricated gang expert reports, statements or other out of court documents, thereby setting in motion a chain of events that resulted in the presentation of fabricated evidence at Mr. Gonzales's criminal trial that was material to the outcome.

59.   Upon information and belief, Defendants' misconduct further includes reckless investigation techniques resulting in fabricated evidence, including

recklessly disregarding exonerating alibi evidence and failure to investigate any other leads or potential suspects.

60.   The constitutional source of the violations and obligations asserted herein is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff asserts both procedural and substantive due process violations. To the extent that the source of Plaintiff's rights is any constitutional or statutory source other than due process, this claim is brought on those bases as well.

61.   Defendants, and each of them, engaged in, knew about, or should have known about the acts and/or omissions that caused the constitutional deprivations alleged herein and failed to prevent it and/or ratified/approved it and/or acquiesced to it.

62.   Defendants, and each of them, committed the aforementioned acts and omissions in bad faith and with knowledge that their conduct violated well-established law.

63.   One or more of the acts and omissions alleged herein were a cause of Plaintiff's conviction. Had the recklessly false and fabricated evidence not been presented, there is a reasonable probability that it would have resulted in an outcome more favorable to Mr. Gonzales. Had the fabricated evidence presented at trial as a result of Defendants' conduct not been presented, it could have resulted in a different verdict.

64.   Acting under the color of state law, Defendants and others acted in concert, conspiring and agreeing to deprive Mr. Gonzales of rights, privileges, or immunities secured by the Constitution and laws of the United States.

65.   As a direct and proximate result of Defendants' actions, Mr. Gonzales was wrongly arrested, detained, prosecuted, convicted, and incarcerated for nine years and suffered other grievous injuries and damages set forth above. As a direct and proximate result of Defendants' actions, Plaintiff was injured and is entitled to compensatory damages according to proof.

13

66.    The aforementioned acts and omissions of Defendants were committed by each of them knowingly, willfully, maliciously, oppressively, and/or in reckless disregard of Plaintiff's rights. By reason thereof, Plaintiff is entitled to punitive and exemplary damages from Defendants according to proof.

**B.    SECOND CLAIM FOR RELIEF: §1983 *MONELL*CLAIM**

*Against City of Colton and Colton Police Department*

67.    Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth herein.

68.    Entity defendant City of Colton, through the Colton Police Department, possessed the power and authority to adopt policies and prescribe rules, regulations and practices governing shooting investigations, including customs, policies and/or practices relating to investigations, arrests, evidence, and discovery; as well as to personnel supervision, performance evaluation, internal investigations, discipline, records maintenance, and/or retention.

69.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant City of Colton, , including through the Colton Police Department, with deliberate indifference, and/or conscious or reckless disregard to the rights of Plaintiff and others accused of crimes, maintained, enforced, ratified, acquiesced in, and/or applied constitutionally deficient policies, customs and/or practices regarding the investigation of shooting cases, disclosure of exculpatory evidence, use of gang experts, and coercive interrogation techniques.

70.    Plaintiff is informed and believes and thereon alleges that, during all or portions of the period relevant to this case, Defendant City of Colton, by and through the Colton Police Department, failed to adopt and implement systems, policies, practices, customs, training, supervision or discipline in areas where the need for such things to occur was obvious. Defendants had: a) no established or clear administrative system in place; b) no stated, written or adequate policies; c)

14

no or inadequate training and supervision; and d) customs, policies and practices that violated Defendants' rights, regarding, *inter alia*, the following issues:

     i.  Coercive interrogation techniques that resulted in false admissions during interrogations, including interrogating juvenile suspects with use of threats of facing capital punishment, and failing to properly *Mirandize* persons interrogated;

    ii.  Failing to investigate alibi exonerating evidence; and,

   iii.  Using gang expert reporting that resulted in fabricated gang reports;

   iv.  Disclosure of exculpatory evidence; and,

    v.  Conducting investigations that do not violate a defendant's rights.

71.   Defendant City of Colton also was aware of prior police misconduct by Defendant Morenberg, and by failing to supervise and discipline, ratified his unconstitutional conduct and was a moving force in Defendant Morenberg's constitutional violations in this case.

72.   The customs, policies, and/or practices of the Defendants City of Colton and Colton Police Department were a moving force behind the constitutional violations alleged by Plaintiff resulting injuries to Plaintiff, entitling Plaintiff to compensatory damages according to proof.

73.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff was damaged as alleged above.

**C.**    **THIRD CLAIM FOR RELIEF: §1983 SUPERVISORY LIABILITY–FAILURE TO TRAIN, SUPERVISE & TAKE CORRECTIVE MEASURES**

*Against DOE Supervisor, and DOES 1-10*

74.   Plaintiff re-alleges all foregoing and subsequent paragraphs as if fully set forth herein.

75.   Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, Defendants DOE Supervisor and DOES 1-10, acting under the color of their authority as supervisory personnel failed in the following responsibilities concerning the investigation of Plaintiff in this criminal case, including but not limited to: failing to adequately train, supervise Defendant Morenberg concerning interrogations of juveniles, properly *Mirandizing* defendants, criminal investigations and disclosure of exonerating evidence, and failing to train, supervise and discipline Defendant Morenberg despite knowledge of a pattern of misconduct by Morenberg. The failure to correct such failures was a moving force which caused the violation of Mr. Gonzales's constitutional rights.

76.   Plaintiff is informed and believes and thereon alleges, that prior to the incident alleged herein, Defendants DOE Supervisor and DOES 1-10, acting under the color of their authority as supervisory personnel failed in the following responsibilities concerning the investigation of Plaintiff in this criminal case, including but not limited to: failing to train and supervise and ensure Defendant Collins was qualified to render expert gang opinions, that Defendant Collins would base his opinions on the facts of the case and reliable statistical evidence, and would not render false gang expert opinions.  The failure to correct such failures was a moving force which caused the violation of Mr. Gonzales's constitutional rights.

77.   Plaintiff is informed and believes that Defendant DOE Supervisor and DOES 1-10 had a duty to train and instruct their subordinates to prevent similar acts, but failed to take steps to properly train, supervise, investigate or instruct detectives and gang experts in the course of gang shooting investigations.

78.   As a legal result of the conduct of Defendant DOE Supervisor and DOES 1-10, as described above, Plaintiff was damaged as alleged herein and as set forth above.

16

WHEREFORE Plaintiff JOSHUA GONZALES, requests relief as follows, and according to proof, against each Defendant:

1.    General and compensatory damages in an amount according to proof;

2.    Special damages in an amount according to proof;

3.    Exemplary and punitive damages against each Defendant, in an amount according to proof;

4.    Costs of suit, including attorneys' fees, under 42 U.S.C. §1988, and any other applicable provision of law; and,

5.    Such other relief as may be warranted or as is just and proper.

Respectfully submitted,

LAW OFFICE OF JARRETT ADAMS, PLLC.

DATED:   May 14, 2020       By: /s/   *Lillian C. Muñoz*
                                             LILLIAN C. MUÑOZ
                                             Attorneys for Plaintiff JOSHUA
                                             ZAMORA GONZALES

LAW OFFICE OF JARRETT ADAMS, PLLC.

DATED:   May 14, 2020       By: /s/   *Jarrett Adams*
                                             JARRETT ADAMS
                                             *Pro Hac Vice*
                                             Attorneys for Plaintiff JOSHUA
                                             ZAMORA GONZALES

///

///

17

## <u>JURY DEMAND</u>

Trial by jury of all issues is demanded.

DATED:  May 14, 2020          By:  /s/    *Lillian C. Muñoz*
                                      LILLIAN C. MUÑOZ
                                      Attorneys for Plaintiff JOSHUA
                                      ZAMORA GONZALES

DATED:  May 14, 2020          By:  /s/    *Jarrett Adams*
                                      JARRETT ADAMS
                                      *Pro Hac Vice*
                                      Attorneys for Plaintiff JOSHUA
                                      ZAMORAGONZALES